**IN THE SUPERIOR COURT OF DELAWARE**

IN RE:  512 MAIN STREET,      )
STANTON, DE 19804        )      **N25M-04-017 DJB**
                                    )

Date Submitted: September 8, 2025
Date Decided:  October 24, 2025

## ORDER

**ON DNREC'S PETITION FOR ACCESS TO PROPERTY – GRANTED.
ON THE MOTION TO DISMISS THE PETITION – DENIED.**

This matter involves an area of contaminated soil located at 512 Main Street, in Stanton, Delaware (hereinafter "the Property").[1]  The Property is owned by the Ralph V. Estep Family Trust (hereinafter "the Trust").[2]  The State of Delaware's Department of Natural Resources and Environmental Control (hereinafter "DNREC") filed a Petition seeking access to the Property to address the contamination that resulted when an Underground Storage Tank (hereinafter "UST") released petroleum.  The Trust filed a Motion to Dismiss the Petition.[3]  A two-part hearing was held on the Petition on August 14 and 25, 2025.[4]  Given the serious public hazard that exists on the Property that requires remediation to prevent further

---

[1] *IN RE: 512 MAIN ST, STANTON, DE 19804*, N25M-04-017 DJB, Superior Court Civil Docket Item (hereinafter "D.I.") 1.
[2] D.I. 1, ¶ 5.  The Trust is not the sole owner of the Property.
[3] D.I. 4.
[4] D.I. 19, 24.

contamination of the water basin that supplies water to the majority of New Castle County residents, and upon a finding that due process has been satisfied, the Petition to Access the Property is **GRANTED** for the reasons detailed herein. The Motion to Dismiss the Petition is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

The Property at issue previously held a UST until December of 2016, when it was removed.[5] During removal, release of petroleum was detected. When DNREC learned of the release, it sent the Trust, Mr. Robert Duncan, and STTP, LLC (collectively "the Responsible Parties"[6]) a letter indicating a hydrogeologic investigation or excavation of the area impacted by the release was now required.[7] Those initial letters were sent in the Spring and Summer of 2017.[8]

Despite the initial letter, the petroleum release remained unresolved. In March, May, and October of 2019, DNREC again sent correspondence to the

---

[5] D.I. 1, ¶¶ 4, 6.

[6] This term is used here to represent the parties presented by DNREC as being the landowners and otherwise "Responsible Parties" collectively and is not a legal ruling or determination that the parties so referred are deemed the Responsible Parties pursuant to 7 *Del. C.* § 7406. That action is not before the Court and this term is used for convenience purposes in this Order only.

[7] *Id.* at ¶ 6.

[8] *Id.* at ¶ 6.

Responsible Parties.[9]   Having once again not received a response, DNREC issued a Notice of Violation in December of 2020.[10]

In 2023, DNREC issued two Secretary Orders to the Responsible Parties.  The first Order, issued on January 17, 2023, outlined the required action to resolve the petroleum release.[11]  As the release still had not been addressed, the second, June 23, 2023, Order informed the Responsible Parties that DNREC was taking control over the corrective action and would be addressing the release itself.[12]

On May 21, 2024, DNREC's contractor attempted to perform a hydrogeologic investigation on the Property.[13]  During the visit, DNREC alleges Mr. Ralph Estep confronted the contractor, who "used his car to run over traffic cones placed to protect the workers performing the investigation."[14]  This conduct stopped the investigation for the day, but the contractor returned the next day and completed the investigation.[15]  Mr. Estep denies this series of events.[16]   The investigation confirmed a petroleum release occurred and that the chemicals presently remain and were above risk-based screening levels, which required further action.[17]  DNREC

---

[9] *Id.* at ¶ 7.
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶ 9.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.*
[15] *Id.* at ¶ 12
[16] D.I. 24.
[17] *Id.* at ¶ 13.

sent notice of the need to implement excavation activities to the Responsible Parties on December 27, 2024.[18]

In response to the December 27 notice, a letter purportedly on behalf of the Trust, penned by Mr. Richard Abbott acting as an agent of the Trust, which indicated that any attempt to enter the Property would be trespass, and offered to compromise if the work would be performed at the State's expense.[19] DNREC declined the offer and notified the Responsible Parties of environmental testing set to occur in the first and second weeks of April.[20] DNREC also sent a reminder of this testing on March 24, 2025.[21]

On March 27, 2025, Mr. Abbott sent another letter to DNREC that stated the police would be called should DNREC attempt to enter the Property.[22] In response to that letter, DNREC filed the instant Petition seeking and Order from the Court granting access to the Property pursuant to 7 *Del. C.* §7408(e).[23] On April 29, 2025, the Trust filed a Motion to Dismiss.[24] The Trust also wrote to the Court insisting DNREC violated procedural rules such that assigning the matter to a Superior Court

---

[18] *Id.* at ¶ 14.
[19] *Id.* at ¶ 15.
[20] *Id.* at ¶ 16.
[21] *Id.* at ¶ 17.
[22] *Id.* at ¶ 18.
[23] *Id.* at ¶ 19.
[24] D.I. 4.

Judge, rather than a Commissioner, was appropriate.[25]  That request was granted, and the Court scheduled a status conference.[26]

On June 11, 2025, a status conference was held to discuss the pending Petition and the Motion to Dismiss at which times deadlines were set, as well as a hearing date.[27]  DNREC timely filed its Response to the Motion on June 27, 2025.[28]  A hearing was held over the span on two days on August 14, 2025, and August 25, 2025.[29]  At the hearing, DNREC presented the testimony of its employee Ross Douglas Elliot, a Hydrologist, licensed under Title 24, Chapter 36 of the Delaware Code.  Through Mr. Elliot, DNREC presented evidence of a Hydrogeologic Report that showed the results of the soil sampling study conducted on the Property and the levels of toxins released as a result of the petroleum leak.  The proposed corrective measures were testified to by Mr. Elliot.  As was the public hazard that currently exists and what would continue to exist should this not be remedied.[30]

The Trust called Ralph Esteep, who testified to the number of tenants on the Property currently, and the potential harm that may arise should DNREC take corrective action.  Post hearing, the parties each supplied the Court with

---

[25] D.I. 5.
[26] D.I. 6 and 7.
[27] D.I. 10.
[28] D.I. 11.
[29] D.I. 19, 24.
[30] D.I. 19.

supplemental filings. At the Court's request, DNREC submitted its updated Proposed Order, clarifying the action DNREC now sought in relation to the Petition.[31] DNREC was also asked to provide the Court and counsel with updated details regarding the proposed remediation. The requested materials and Order were submitted on September 4, 2025.[32] The Trust was given the opportunity to respond and did so on September 8, 2025.[33] This matter is now ripe for decision.

## II. STANDARD OF REVIEW

The Motion to Dismiss the Petition does not indicate upon which Rule of Civil Procedure it is based. In it, the Trust argues that the Petition, which was sought under 7 *Del. C.* §7408(e), failed to follow procedural requirements. The motion challenges whether the Trust has been afforded due process under 7 *Del. C.* § 7408(e). In determining a due process challenge, the Court must weigh the "*Eldridge factors*" set out by the United States Supreme Court in *Mathews v. Eldridge*.[34] Under Eldridge the Court must examine:

1. the private interest that will be affected by the official action;

2. the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

---

[31] D.I. 27.
[32] *Id.*
[33] D.I. 28.
[34] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

3. and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail.

To the extent the Trust argues the Petition fails to state a claim upon which relief can be granted under Delaware Civil Rule of Procedure 12(b), the court must decide whether there are any reasonably conceivable set of circumstances, susceptible of proof, upon which a plaintiff may recover.[35]  Pursuant to Rule 12 (b)(6), the Court will accept all well pleaded factual allegations as true, accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, and draw all reasonable inferences in favor of the non-moving party.  The Court will not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[36]  However, given that this is not a traditional civil suit and there is no plaintiff, the review of this Petition is limited to what is being challenged in the Motion to Dismiss – whether due process has been afforded.

### III.  ANALYSIS

The Trust's Motion to Dismiss argues DNREC's Petition violated the procedural requirements enumerated in 7 *Del. C.* §7408(e), for filing "the Petition

---

[35] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (quoting Super. Ct. Civ. R. 12(b)(6)).

[36] *Id.* (quoting *Central Mortgage Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011)).

as a miscellaneous civil action and arrogated for itself the prerogative to schedule the hearing."[37] The Trust submits 7 *Del. C.* §7408(e) requires the Court schedule a hearing after, "giving due consideration to the immediacy of the facts presented in the petition," which the Trust alleges did not occur here in its initial filing.[38]

Further, the Trust contends "the summary hearing procedure afforded by §7408 does not afford the due process necessary to enter the Property and make the substantial changes DNREC proposes."[39] The Trust submits DNREC's causes of action should have been pursued under Title 7, Chapter 60, the avenue upon which DNREC initially proceeded the first Secretary Order was issued on January 17, 2023. According to the Trust, DNREC abandoned its Chapter 60 proceeding because its claims are barred by the three-year statute of limitations prescribed in 10 *Del. C.* §8106.

Section 7408(e) of Title 7 of the Delaware code provides:

[DNREC] is authorized to petition the Superior Court for an order for access to real property, to investigate the possibility of underground migration of released regulated substances, from an underground storage tank or facility, to the real property, to control or contain released regulated substances that may be on the real property, and to undertake corrective action on the real property. The Superior Court shall schedule a hearing on the petition, giving due consideration to the immediacy of the facts presented in the petition. The Department shall give the owners of record of the real property notice of the hearing on the petition at least 10 days before the hearing…For good cause shown,

---

[37] D.I. 4.
[38] *Id.*
[39] *Id.*

the Superior Court shall grant the petition and order access to the real property in furtherance of the purpose of this chapter and for protection of the environment, for specified actions and goals, and on such terms and conditions, as may be supported by the facts and circumstances presented...[40]

DNREC followed 7 *Del. C.* §7408(e)'s procedural requirements. DNREC initially filed the Petition in Superior Court on April 2, 2025.[41] A Notice of Hearing on the Petition for Access was sent on April 9, 2025.[42] The Petition was promptly assigned to a Superior Court Judge, and an initial status conference was scheduled for June 11, 2025. Both parties were present at that meeting where the Court scheduled a hearing on July 21, 2025. The Trust agreed to also argue the Motion to Dismiss on that date.

### A.    Section 7408 (e) of Chapter 7 Provides Due Process Rights.

Despite the April 9, 2025, notice and the June 11, 2025, conference, the Trust argues its due process rights were violated. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[43]

[D]ue process is flexible and calls for such procedural protections as the particular situation demands…This Court has explained that where *only property rights are involved*, mere postponement of the judicial enquiry is not a denial of due process…Thus, the necessity of prompt

---

[40] 7 *Del. C.* §7408(e).
[41] D.I. 1.
[42] D.I. 2.
[43] *Cohen v. State ex rel. Stewart*, 89 A.3d 65, 86-87 (Del. 2014) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)) (emphasis added).

action by the State or impracticability of providing a meaningful pre-deprivation hearing, coupled with the availability of post-deprivation process to assess the legality of the official action, may satisfy the requirements of procedural due process.[44]

In evaluating the "*Eldridge factors*," DNREC's Petition under 7 *Del. C.* § 7408(e) was reviewed to determine the private interest that affected by the official action, the risk of an "erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail."[45]

After careful consideration of these factors, it is clear that no due process violation occurred. Communication regarding the chemical release on the Property dates back to 2017. Years later, on April 5, 2025, the Trust was sent notice of the Petition filed in Superior Court. Counsel was present at the scheduling conference where a hearing date was agreed upon. All parties had the opportunity to be heard at the two-day hearing. Thus, the Trust's contention that proper notice wasn't given became moot when the matter was fully heard at the hearing.

The Trust argues DNREC's Petition pursuant to 7 *Del. C.* §7408(e), rather than proceeding under Chapter 60, deprived the Trust of proper notice. However, the relief sought by DNREC under 7 *Del. C.* §7408(e) is different and unavailable

---

[44] *Id.* at 87 (internal citations omitted).
[45] *Id.* at 86-87.

under Chapter 60. "DNREC's Secretary is responsible for enforcing the provisions of the [Environmental Control] Act."[46] Thus, if a responsible party fails to "take measures for the prompt control, containment, and removal of the released regulated substances to the satisfaction of the Department," pursuant to 7 *Del. C.* §7406, a Secretary's Order could be issued requiring that party to take action and do so.[47] However, the Secretary's Order does not authorize DNREC to take corrective action. Instead, DNREC may access private property to perform a corrective action if an owner allows access, by Petition,[48] or in the event of an emergency.[49]

### 1. Consideration for the private interest that will be affected by the official action.

Due consideration has been given to the private interest affected by DNREC's proposed plan. The testimony from Mr. Esteep was received and acknowledged that his accounting business is upon that property, but he is also the landlord to tenants both in a structured building and a food truck that is stationed and electrically set up in the parking lot. Mr. Esteep detailed that there is a functioning liquor store tenant, who has allotted parking spaces which would be affected should remediation work cause the concrete to be torn up temporarily. Additionally, a residential tenant

---

[46] *State of Delaware Dep't of Nat Res. & Env't Control v. McGinnis Auto & Mobile Home Salvage, LLC*, 225 A.3d 1251, 1254 (Del. 2020).
[47] *Id.* at 1255
[48] 7 *Del. C.* §7408 (e).
[49] 7 *Del. C.* §7408 (f).

resides in an apartment above the liquor store. Finally, the original proposed remediation plan required movement of the affixed food truck.

However, the updated remediation plan submitted by DNREC minimized the need for the food truck relocation. In addition, the timeline proposed is narrowly tailored in consideration of the unavoidable inconvenience to the landowner and tenants. No one is denying there will be an inconvenience to private interests should remediation occur.

Notably, and as discussed at the hearing, regardless of any Court action, Mr. Esteep is now keenly aware of the dangers lurking on his property and the potential carcinogens seeping into the water basin used by Artesian Water Company to supply water to the majority of New Castle County residents. This, in and of itself, obviates the ability of Mr. Esteep to argue that the DNREC Petition so negatively affects any private interest to prevent remediation. At a minimum, a prudent person with this knowledge would likely explore remediation and resolution of the situation. And the issue of liability is not before the Court nor necessary for a decision on the Petition. However, this fact is relevant to the consideration of the private interest affected, since arguably action may be required regardless of this Court's decision on the challenged Petition.

2. **The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.**

As noted, private interests will be affected by the proposed remediation. However, while the testimony regarding this was accepted and acknowledged, so too, is the testimony regarding the very real danger to the public that exists and will continue to exist if remediation does not occur. The purpose of the Court's request for additional submission and remediation proposal from DNREC was to evaluate whether there would be an erroneous deprivation or substitute procedural safeguards. This was also explored by the Court's questioning during the hearing and arguments on the Petition. After duly considering the evidence, the new proposed Order and remediation plan sufficiently alleviates any concerns that there will be an erroneous deprivation and that no substitute procedural safeguards are required.

3. **The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures would entail.**

The testimony provided by DNREC's expert, Mr. Elliot, was compelling and demonstrated a compelling need for the proposed remediation. Following a careful review of the testimony presented, as well as the non-objected-to exhibits[50] leave no

---

[50] The Trust objected to the full admission of the Hydrogeologic Report at the hearing. While testimony was heard, the Court need not and does not rely upon

other conclusion that the Government has a compelling interest in remediation. No other substitute procedures are possible here. This is a public health hazard and must be corrected.

**B. Good Cause Exists to Grant Access to the Property**

After many unsuccessful attempts to get the Responsible Parties to address the chemical release, DNREC appropriately filed a Petition for access under 7 *Del. C.* §7408(e). In so doing, DNREC seeks a Court Order allowing DNREC to enter the property to clean up the chemical release. DNREC bears the burden of establishing that good cause exists. Following consideration of all of the evidence presented at the hearing, it is clear that DNREC has satisfied its burden.

DNREC has been contacting the Responsible Parties about the petroleum release since 2017. When DNREC finally preformed an investigation on the Property approximately seven (7) years later, it was able to confirm the chemicals posed a risk to public safety. Delaying this process has continued to hinder DNREC's efforts to address the chemical release and protect the public from toxins and carcinogens. This public includes the tenants on the Property, as well as Mr. Esteep. Thus, judicial intervention is necessary; the Petition sought by DNREC for

---

the portions to which were objected, as sufficient evidence exists to support the conclusions without consideration of the full report.

access to the Property is **GRANTED**, as good cause exits as no due process violation occurred.

**C. DNREC Is Not Subject to The Three-Year Statute of Limitation's Period**

The Trust also argues DNREC is procedurally barred by the three-year statute of limitations prescribed in 10 *Del. C.* §8106.  This argument is also unsuccessful. "As a general matter, the doctrine of sovereign immunity permits the State to bring actions in its sovereign capacity without being subject to statutes of limitation that govern private parties."[51]  The Trust has not provided, nor is the Court aware, of any statue limiting the State's sovereign immunity such that the Petition should be dismissed.

**D. CONCLUSION**

Public safety concerns mandate DNREC's access to the Property and access will be allowed in accordance with the supplemental proposed Order.  Due process has been afforded to the Trust.  Even under a review of this motion pursuant to Superior Court Civil Rule of Procedure 12(b), the Motion is without merit.

Therefore, on this 24th day of October, 2025, upon review and consideration of Petitioner Delaware Department of Natural Resources and Environmental Control's ("DNREC") Petition for Access filed on April 2, 2025;

---

[51] *State ex rel. Brady v. Pettinaro Enterprises*, 870 A.2d 513, 526 (Del. Ch. 2005) (citing *Mayor & Council of Wilmington v. Dukes*, 157 A.2d 789, 794 (Del. 1960)).

WHEREAS, DNREC submitted its Petition for Access pursuant to 7 Delaware Code section 7408(e), seeking access to a property at 512 Main Street in Stanton, Delaware, 19804 (the "Property");

WHEREAS, DNREC, at a hearing on August 12th and continued on August 20th, 2025, and in its supplemental submissions has established good cause to access the Property and perform remedial actions as necessary to protect human health and the environment at the Property;

NOW, THEREFORE it is hereby **ORDERED** that DNREC and/or its contractor(s) may access the Property as follows:

1. DNREC and/or its contractor(s) may access the property for two (2) days for the purpose of taking soil borings and soil samples to characterize the soil to be disposed in the over excavation process.

2. DNREC and/or its contractor(s) may access the Property daily, for thirty (30) continuous days, between the hours of 8 A.M. and 6 P.M., to perform an over excavation of the release. Those thirty (30) continuous days shall commence when DNREC and/or its contractor(s) commence the over excavation process.

a. The over excavation will be performed pursuant to a workplan that DNREC shall share with the Property owner and shall submit to the Court.

b. The workplan shall incorporate reasonable efforts to minimize the disruption to the Property owner's tenants, but such efforts will not include any

actions inconsistent with workplace and public safety considerations, and with the effective removal of contamination from the soil and groundwater at and under the Property.

c. Two weeks prior to commencement of the over excavation, DNREC and/or its contractor(s) shall meet, in person or virtually, with the Property owner and any tenants interested in attending. The purpose of the meeting shall be to explain the workplan, the efforts that will be taken to minimize disruption, routes of access to the parcel by customers, and the schedule of remedial activities on the Property. If access through the entry and parking area of the Ralph V. Estep firm is required to facilitate customer access to the operations of the tenants, the Property owner shall allow such access.

d. During over excavation operations, DNREC and/or its contractors, using their professional judgment, shall have the right to make the final determination about all over excavation operations, and all workplace and public safety measures, at the site.

e. At least two days prior to the commencement of over excavation operations, the Property owner shall remove, or cause its tenants to remove, any storage units or other objects that may interfere with the excavation area, as set forth in the workplan. This obligation may also extend to the onsite taco truck if the workplan determines that moving the taco truck is necessary. The Property owner, or it's tenant, shall, if

necessary, at least two days prior to commencement of over excavation operations, relocate the taco truck to an area away from the area of over excavation as reflected in the workplan. If relocation of the taco truck or the storage boxes to the parking area of the Ralph V. Estep firm is recommended by the workplan, the Property owner shall allow such access.

3. At the conclusion of the over excavation, and during the thirty (30) continuous day access period referenced in paragraph 2, above, DNREC and/or its contractor(s) shall fill the over excavation area with appropriate backfill material, and shall repair any damage to the asphalt parking area surface caused by the over excavation process. All efforts shall be made to restore the parking area, as closely as possible, to its original condition prior to the over excavation process.

4. Within thirty (30) days after the conclusion of the over excavation, DNREC and/or its contractor(s) may access the Property for a period of one (1) calendar week to install groundwater monitoring wells.

5. After the groundwater monitoring wells are installed, DNREC and/or its contractor(s) may then access the Property for the purpose of taking quarterly samples from all installed monitoring wells, and to make any repairs to monitoring wells as necessary. Neither the Property owner nor its tenants shall take any actions to interfere with the operation of these monitoring wells. Access by DNREC and/or its contractor(s), shall be permitted for a for a period of two (2) years from the date

of the initial installation of the monitoring wells, for purposes of quarterly monitoring and for monitoring well maintenance and repair.

6. This Court shall retain jurisdiction over this matter until the conclusion of the two (2)-year monitoring period as set forth in paragraph 5, above. DNREC shall, at the conclusion of the two (2)-year monitoring period, and as soon as the report is reasonably available, provide to the Court and to the Property owner a report on the status of the remedial action at the Property.

7. Should DNREC conclude, at any point after over excavation, that additional remediation to the Property is necessary, DNREC shall submit an amended Petition explaining in detail any proposed additional remediation, and a further hearing may be held to evaluate the impacts on the Property of such proposed further remediation.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

Cc:   All parties via Lexis File&Serve Express